UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-61736-CIV-HURLEY

RESPONSIBLE ME, INC.,
    plaintiff,

vs.

EVENFLO COMPANY, INC., et al.
    defendants.
_____/

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Responsible Me, Inc. ("Responsible Me") brings this suit against defendant Evenflo Company, Inc. ("Evenflo Defendant") and Sears Roebuck & Co., K Mart Corporation, Toys "R" Us, Inc., Babies, "R" Us, Inc., Burlington Coat Factory Direct Corporation, Target Corporation, and Wal-Mart Stores ("Retail Defendants") alleging infringement of U.S. Patent No. 7,134,714 ("the '714 patent").

The Evenflo and Retail Defendants now move for summary judgment on two grounds. First, they contend that the accused product does not infringe on the '714 patent, either literally or under the doctrine of equivalents. [DE# 70]. Second, in the alternative, they contend that the '714 is invalid as a matter of law under 35 U.S.C. §§ 103, 112 due to obviousness by reason of prior art.

For reasons stated below, the court has determined to grant the defendants' motion for summary judgment on the issue of non-infringement, rendering it unnecessary to reach the issue of patent invalidity.

1

## Fact Background

The patent at issue covers highchair sub-trays that may be used to keep food and storage items away from children during feeding to prevent spilling. As described in the '714 patent, the primary objective of the accessory sub-tray disclosed and claimed is to provide "a detachable device for attaching to a tray edge of highchairs, booster chairs, activity chairs, strollers and car seats for holding baby bottles, food and the like, out of reach of a sitting child, in place of using the surfaces of adjacent tables and counter-tops." ['714 Patent, column 2, lines 34-38].

Numerous prior art references disclose auxiliary accessory sub-trays similar to the one claimed in the '714 patent, including prior art patents issued to Lloyd (U.S. Patent No. 4,927,024) and Semon et al. (U.S. Patent No. 6,056,378), both of which were cited during prosecution of the '714 Patent.

During prosecution of the '714 patent, following a prior art rejection based on the Semon patent, the patent attorney representing Responsible Me amended claims 1, 3 and 4 of the '714 Patent to add the following limitations:

| | | |
|---|---|---|
| Claim 1 | "the holder surface being solely used for holding the food item or the beverage item when the drawer sub-tray is in the extended position" | '714 Patent col. 12, lines 41-43 |
| Claim 3 | "a holder surface on the single drawer subtray that only holds the item when the single drawer subtray is in the extended position, the item being selected from at least one of a food and a beverage" | '714 Patent col. 13, lines 35-37 |
| Claim 4 | "the sub-tray in the extended position is adaptable to solely hold food and beverage items" | '714 Patent col. 14, lines 36-38 |

In adding these limitations, the patent attorney for Responsible Me argued to the patent examiner that the claims of the '714 Patent were patentable over the teachings of Semon et al. on the basis that Semon et al. did not teach a drawer subtray that was "only" or "solely" capable of supporting food/beverage items when the drawer subtray was in the extended position. Put another way, the attorney demonstrated that while the prior art drawer-sub-trays could be used to store food and beverage items when in the storage position, the claimed drawer sub-trays could not be used in this manner:

    a.    "[A]pplicant's claims are directed to the structure of a 'single drawer-subtray that when it's in 'a storage position being underneath the main tray ... the drawer-subtray is not useable for supporting the item'... See subject claim 12, for example. There is no description, teaching or suggestion for the 'add-on drawer' in Semon to be 'not useable' when the drawer is in its' storage position." 0/5/05 Amendment, p. 6, ¶3.

    b.    "[t]he subject invention ... only allows the 'drawer-subtray' to be useful to support items when the 'drawer-sub-tray' is in an 'extended position' pulled away from 'the main tray." 12/3/04 Amendment, p. 6 ¶2.

    c.    "Such claimed structural limitations are clearly opposition to those of the Semon '378 reference. There is no description, teaching or suggestion for allowing Semon '378 the structure to only' or 'solely' support 'food items or beverage items' when their 'add-on drawer' is in an extended position." 3/08/06 Amendment, p. 15, ¶2.

    d.    "Such claimed structural limitations are clearly opposite to those of the Semon '378 reference. There is no description, teaching, or suggestion for allowing Semon '378 the structure to 'only' or 'solely' support 'food items or beverage items' when their 'add on drawer' is in an extended position." 7/31/06 Amendment, p. 9, ¶8.

The Simon et al. reference discloses a drawer subtray that has sidewalls and a floor designed to allow for storage of items when the drawer is in the storage or extended position. Similarly, the accused drawer sub-trays are capable of holding food and/or beverage items (e.g. baby spoons,

3

crackers)[1] in the closed, storage position. In this respect, Evenflo Senior Project Engineer Todd S. Ventrola, the designer of the "Expressions I" highchair model accused of infringing the '714 patent avers:

> I have reviewed the pictures submitted in connection with defendants' motion for summary judgment showing the Expressions I highchair parent organizer subtray being used to hold and store food and beverage items, namely infant food spoons and crackers, in the extended, partially extended, and closed, storage position. It is my opinion that those pictures accurately depict the holding and storage capabilities of the Expressions I parent organizer sub-tray....
> Based on my 7 years of experience in the juvenile industry .... it is my opinion that the parent organizer subtray on the Expressions I highchair product has been used and is currently being used to hold items, such as infant spoons and nonperishable food items, in the closed, storage position, by consumers... I have placed infant feeding spoons and cracker packages in the parent organizer subtray on the Expressions I highchair and did not encounter any difficulties in moving the subtray in and out of the main tray while holding and supporting those items as well as using the sub-tray to hold and support those items in the closed, storage position.

[ DE # 124-2].

## Standard of Review

Summary judgment is appropriate when the pleadings and evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *See Celotex Corp. v Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).

---

[1] In its initial claim construction briefing, Responsible Me proffered a construction of the term "items" which encompassed "bottles, food jars, spoons, food, liquid, utensils, glasses and the like." See Responsible Me Opening Brief, p. 17, ¶1. In defending against the instant summary judgment, it advocates a more restrictive definition, suggesting that this term applies only to baby bottles and baby food jars. See Responsible Me Memorandum in Opposition to Summary Judgment, p,. 13, ¶ 1.

In determining whether a genuine issue of material fact sufficient to preclude summary judgment exists, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. *Anderson v Liberty Lobby, Inc.*, 477 U.S. 2424, 255, 106 S. Ct. 2505, 91 L.Ed. 202 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. *Id. at* 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50.

Thus, summary judgment is appropriate only where the non-movant fails to offer "evidence on which the jury could reasonably find for the non-movant." *Id.* at 252. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. *Celotex*, 477 U.S. at 322.

### Discussion

A determination of infringement involves a two-step analysis. First, the court must determine the scope and meaning of the patent claims asserted. *Cybor Corp. v FAS Techs, Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998)(*en banc*). Second, the properly construed claims must be compared to the allegedly infringing device to determine whether, as a matter of fact, all of the limitations of at least one claim are present, either literally or by a substantial equivalent. *Johnson Worldwide Associates, Inc. v Zebco Corp.*, 175 F.3d 985, 988 (Fed. Cir. 1999).

Infringement, either literal or under the doctrine of equivalents, is generally a question of fact. *V-Formation, Inc. v Benetton Group SpA*, 401 F.3d 1307, 1310 (Fed. Cir. 2005). Therefore, summary judgement of infringement or non infringement is appropriate "only 'when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found

in the accused device.'" *Id.*, citing *Gart v Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001).

## Literal Infringement

Literal infringement requires that each and every limitation set forth in a claim appear in an accused product. *V- Formation Inc. v Bennetton Group Spa*, 401 F.3d 1307, 1312 (Fed. Cir. 2005); *Bayer AG v Elan Pharmaceutical Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). If any limitation in a claim is missing from an accused device or method, under the "all elements rule," the court must find that the accused device or method does not infringe. *Kustom Signals, Inc. v Applied Concepts, Inc.*, 264 F.3d 1326, 1333 (Fed. Cir. 2001); *Warner-Jenkinson Co. v Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997).

In this case, the basis for the defendants' claim of non-infringement is that the accused product does not have the claim limitation (1) "the holder surface being solely used for holding the food item or the beverage item when the drawer sub-tray is in the extended position,"[2] (2) "a holder surface on the single drawer sub-tray that only holds the item when the single drawer sub-tray is in the extended position, the item being selected from at least one of a food and a beverage,"[3] or (3) "the sub-tray in the extended position is adaptable to solely. hold food and beverage items"[4] because all of the accused products made by Evenflo and/or sold by the Retailer Defendants include drawer- sub-trays that *can* be used to support food and/or beverage items when the drawer sub-trays are in either the extended or storage positions.

---

[2]Claim 1, '714 Patent, col. 12, lines 41-43.

[3]Claim 3, '714 Patent, col. 13, lines 35-37.

[4]Claim 4, '714 Patent, col 14, lines 36-38.

6

In its claim construction order, this court previously found, based on the clear and unambiguous claim language, that the limitation "the holder surface being solely used for holding the food item or the beverage item when the drawer sub-tray is in the extended position, the item being selected from at least one of a food and beverage" shall be construed as meaning "the holder surface on the sub-tray is usable to hold food and/or beverage items only when in the extended position." The court further found that the limitation "a holder surface on the single drawer sub-tray that only holds the item when the single drawer sub-tray is in the extended position" shall be construed as meaning "the holder surface on the sub-tray is usable to hold food and/or beverage items only when in the extended position." Finally, the court found that the limitation "the sub-tray in the extended position is adaptable to solely hold food and beverage items" shall be construed to mean "the holder surface on the sub-tray is usable to hold food and/or beverage items only when in the extended position."

In light of this construction, no reasonable jury could determine that any Evenflo/Retailer Defendant product that includes a drawer-sub-tray which can be used to support food and beverage items when the drawer-sub-tray is in the storage position literally infringes on plaintiff's claims. To hold otherwise would do violence to the "all elements" doctrine and effectively require a re-writing of the claims to eliminate the "solely" and "only" limitations from claims 1, 3 and 4.

Because the accused products include a feature that is expressly excluded from the scope of the claim in the '714 patent, defendants are entitled to summary judgment on the issue of literal infringement as a matter of law.

7

## Doctrine of Equivalents

Defendants also move for summary judgment that there can be no infringement under the doctrine of equivalents. Under this doctrine, a claim limitation not literally met may nevertheless be infringed upon by an element of the accused product based on equivalent identity of elements if the differences between the two are "insubstantial to one of ordinary skill in the art." *Boehringer Ingelheim Vetmedica, Inc. v Schering-Plough Corp.*, 320 F.3d 1339, 1351 (Fed. Cir. 2003); *Warner- Jenkinson Co. v Hilton Davis Chem. Co.*, 520 U.S. 17, 39-40, 117 S. Ct. 1040, 137 L.Ed.2d 146 (1977). While no particular linguistic framework controls the inquiry, the "unsubstantial differences" inquiry may be guided by determining "whether the element in the accused device performs substantially the same function in substantially the same way to obtain the same result as the claim limitation." This is referred to as the "function-way-result" test. *Boehringer Ingelhem Vetmedica*, 320 F.3d at 1351.

However, prosecution history estoppel may preclude a patentee from recapturing under the doctrine of equivalents subject matter which was surrendered during prosecution to obtain a patent. *Festo Corp. v Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.* 535 U. S. 722, 741, 122 S. Ct. 1831, 152 L.Ed.2d 944 (2002); *Pharmacia & Upjohn Co. v Mylan Pharmaceuticals, Inc.*, 170 F.3d 1373, 1376-77 (Fed. Cir. 1999). That is, prosecution history estoppel serves to limit the doctrine of equivalents by denying equivalents to a claim limitation whose scope was narrowed during prosecution for reasons related to patentability. *Honeywell Int'l Inc. v Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1142 (Fed. Cir. 2004)(*en banc*); *Pioneer Magnetics, Inc. v Micro Linear Corp.*, 330 F.3d 1352, 1356 (Fed. Cir. 2003).

8

Prosecution history estoppel encompasses two distinct theories– amendment-based estoppel and argument-based estoppel. *Deering Precision Instruments, L. L. C. v. Vector Distribution Systems, Inc.*, 347 F.3d 1314, 1324 (Fed. Cir. 2003). Amendment-based estoppel arises when an amendment is made to secure the patent and the amendment narrows the patent's scope. *Festo*, 535 U.S. at 736. This doctrine ensures that when a patentee responds to a PTO rejection of his application by narrowing his claims, the prosecution history will estop him from later arguing that the subject matter covered by his original broader claim was nothing more than an equivalent to the patented claim. *Festo*, 535 U.S. at 727. That is, in this situation the patentee is precluded from arguing that the surrendered territory should be deemed equivalent to the literal claims of the issued patent. *Id.* at 733-34. This concept is discussed most often in the context of amendments made to avoid prior art. *Id* at 735; *Pioneer Magnetics, Inc. V Micro Linear Corp.*, 330 F.3d 1352 (Fed. Cir. 2003). However, *any* narrowing amendment made to satisfy any requirement of the Patent Act may give rise to an estoppel with respect to the amended claim limitation. *Festo* at 736.

Where amendment-based estoppel is invoked, the patentee bears the burden of establishing that the amendment was not made for reasons related to patentability. *Id.* at 739. "When the patentee is unable to explain the reason for amendment, estoppel not only applies but also "bars the application of the doctrine of equivalents as to that element." *Id.* at 740. The patentee also bears the burden of demonstrating that the amendment does not surrender the particular equivalent in question. In the absence of such a demonstration, a rebuttable presumption arises that estoppel bars a finding of equivalence. *Id.* at 740-41.

The presumption of estoppel is rebuttable because "[t]here are some cases ... where the amendment cannot reasonably be viewed as surrendering a particular equivalent." *Id.* These

9

situations include instances where "(1) the equivalent may have been unforeseeable at the time of the application; (2) the rationale underlying the amendment may bear no more than a tangential relation to the equivalent in question; or (3) there may be some other reason suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question." *Id.* See also *Rhodia Chimie v PPG Indus. Inc.*, 402 F.3d 1371, 1382 (Fed. Cir. 2005). Whether the patentee has rebutted the presumption of surrender is question of law for the court. *Festo Corp v Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1367-68 (Fed Cir. 2003)(*Festo* II).

In related vein, argument-based estoppel prevents a patentee from urging a claim construction which is inconsistent with arguments made to the patent officer during the prosecution of the application in order to secure allowance of the claims. *Southwall Techs., Inc. v Cardinal IG Co.*, 54 F.3d 1570, 1583 (Fed. Cir. 1995). For example, argument-based estoppel may arise where the patentee "relinquished [a] potential claim construction ... in an argument to overcome or distinguish a reference." *Elkay Mfg. Co. v Ebco Mfg. Co.*, 192 F.3d 973, 979 (Fed. Cir. 1999). To invoke argument based estoppel, the prosecution history must evince a "clear and unmistakable surrender of subject matter." *Eagle Comtronics v Arrow Communication Laboratories, Inc.*, 305 F.3d 1303, 1316 (Fed. Cir. 2002).

In this case, the court concludes that Responsible Me is precluded from claiming infringement under the doctrine of equivalents based on amendment-based and argument-based estoppel. As noted above, Responsible Me responded to the patent examiner's initial rejection of its application by narrowing its claims in order to overcome a prior art rejection, giving rise to a rebuttable presumption that its claims are not entitled to any range of equivalents-- a presumption which it has done nothing to rebut.

10

In addition, during prosecution of the '714 patent Responsible Me's patent attorney made repeated arguments distinguishing prior art drawer subtrays capable of supporting and holding food and/or beverage items in the storage position.[5] By thus representing to the public that the invention did not include this particular feature, the inventor cannot now argue that the claims should be read under the doctrine of equivalents to cover drawer-subtrays which are capable of supporting and holding food or beverage items in the storage position. *TurboCare Div. of Demag Delaval Turbomachinery Corp. v General Elec. Co*, 264 F.3d 1111, 1123 (Fed. Cir. 2001); *Hockerson-Halberstadt, Inc. v Avia Group. Int'l Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000); *CVI/Beta Ventures, Inc. v Tura LP*, 112 F.3d 1146, 1158 (Fed. Cir. 1997).

Hence, plaintiff has not rebutted the presumption that prosecution history estoppel applies, and defendant is entitled to summary judgment on the issue of infringement under the doctrine of equivalents.

### **Invalidity of '714 Patent**

In their answers, the Evenflo Defendant and Retailer Defendants assert, in affirmative defense, that the '714 patent is invalid. [DE# 14, 18] In their motion for summary judgment, they also ask the Court to declare the patent invalid. The court's finding of non-infringement, however,

---

[5] In its opening claim construction briefs, Responsible Me similarly argued that the claims of the '714 Patent require an accused drawer subtray to be unusable to support items when the subtray is in the retracted, storage position. Thus, at opening brief, p. 16 ¶2, Responsible Me states" When the sub tray is moved into the 'closed' position, such that the surface and through holes of the sub tray are hidden beneath the main tray in the storage recess, no such items can be supported" It also recites "when the subtray is not in the extended position, the main tray covers the subtray, disallowing any object from extending substantially upward from the subtray." Page 19, ¶2. In its Response Brief, at p. 20, ¶1, its states "the claims themselves clearly describe the subtrays in the stored position as incapable of supporting the items."

renders it unnecessary for the Court to consider the defendants' invalidity argument. *See Lacks Indus. Inc. v McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335, 1346 (Fed. Cir. 2003); *Prima Tek II, L.L.C. v Polypap, S.A.R.I.*, 318 F.3d 1143, 1152-53 (Fed. Cir. 2003). *See also Cardinal Chem Co. v Morton Int'l Inc.*, 508 U.S. 83, 93, 113 S. Ct. 1967 (1993); *Marvin Glass & Associates v Sears, Roebuck & Co.*, 448 F.2d 60 (5th Cir. 1971); *Pro-Tech Welding and Fabrication, Inc. v Lajuett*, 367 F. Supp. 2d 398 (W. D. N. Y. 2005).

### Remaining Claims

In addition to its patent infringement claims (Amended Complaint, Counts 1 and 2), Responsible Me also asserts claim against the Evenflo Defendants and Retailer Defendants under the Unfair Practices in Import Trade Act, 19 U.S.C. § 1337 (Count 3) and the Florida Deceptive and Unfair Trade Practices Act (Count 4).

Because the federal unfair import trade practices claim (Count 3) hinges on an allegation of infringement with the '714 patent [Amended Complaint, ¶34], it necessarily falls with the finding of non-infringement. As to the remaining state law claim for deceptive and unfair trade practices (Count 4), because plaintiff no longer has a viable federal infringement claim, this remaining state law claim belongs in state, rather than federal court. The court shall accordingly dismiss this claim without prejudice to refiling in state court. *Wilson v Dollar-Thrifty Auto Group-South Fla Transport,* 2008 WL 2620191 (11th Cir. July 3, 2008)(unpub), *citing Raney v Allstate Ins. Co.*, 370 F.3d 1086 (11th Cir. 2004); *Williams v St. Vincent Hospital,* 258 Fed. Appx. 293 (11th Cir. 2007); *Sadallah v City of Utica*, 383 F.3d 34, 40 (2d Cir. 2004).

It is accordingly **ORDERED AND ADJUDGED**:

1. The Evenflo and Retail Defendants' motion for summary judgment on the issue of literal infringement and infringement under the doctrine of equivalents [DE# 70] is **GRANTED**. Final summary judgment in favor of the defendants shall accordingly enter on Counts 1, 2 and 3 by separate order of the court.

2. The plaintiff's state law claim for deceptive and unfair trade practices (Count 4) is **DISMISSED WITHOUT PREJUDICE** to refiling in state court.

3. The Clerk of Court is directed to **CLOSE** this file and terminate all other pending motions as **MOOT**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 26 day of August, 2008.

Daniel T. K. Hurley
United States District Judge

cc. All counsel